Janet H. Ferguson, :
                Appellant :
                 :
      v. :
                 : No. 436 C.D. 2022
City Council of the City of Erie : Submitted: December 30, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: June 16, 2023

Janet H. Ferguson (Ferguson) appeals from the April 7, 2022, order of the Court of Common Pleas of Erie County (trial court). The trial court denied Ferguson's appeal of the February 17, 2021, decision of the City Council of the City of Erie (Council), which approved the application of PE Real Estate Holdings, LLC (PERE) for a conditional use.[1] Upon review, we vacate and remand.

## I. Factual & Procedural Background

In November 2020, PERE filed a request for waterfront conditional use approval for its plan to construct a nine-unit, three-story rental apartment building on vacant lots at 824 and 828 West 2nd Street, which is in Erie's Waterfront Residential (WR) district. Reproduced Record (R.R.) at 5a & 18a. The application

---

[1] PERE, the equitable owner of the property at issue, has not intervened in this matter.

was first considered by Erie's Design Committee on December 2, 2020. *Id*. at 18a. The Committee's meeting minutes state that the project was presented by Philip Gesue (Gesue), the project developer, and Brian Weber (Weber), the project architect. *Id*. Gesue and Weber explained that they had first proposed the project in August 2020, but after neighborhood meetings, had redesigned and modified it from 12 to 9 units and added additional off-street parking. *Id*. A front yard setback variance was also being sought through Erie's zoning hearing board in order to best accommodate the off-street parking.[2] *Id*. The Committee voted unanimously (with two abstentions) to approve the project and forward it to Erie's Planning Commission. *Id*. at 19a.

On December 15, 2020, Gesue and Weber presented the project to the Planning Commission. R.R. at 21a-23a. The Commission was also presented with a report from Erie's Department of Planning and Neighborhood Resources, which recommended approval of the project based on the following factors: multiple-family dwellings are a conditional use in the WR district; the Design Committee had approved the project; the Zoning Hearing Board (Board) had granted the front yard setback variance; and the project was consistent with the Erie Refocused Comprehensive Plan and Community Decision-Making Guide's[3] future land use map and goal of creating "housing options for a wide variety of household types." *Id*. The Commission voted unanimously (with one abstention) to recommend approval of the project and forward the matter to Council. *Id*. at 23a & 25a.

---

[2] The variance is the subject matter of the companion case to this matter, *Ferguson v. Zoning Hearing Board of the City of Erie* (Pa. Cmwlth., No. 437 C.D. 2022).

[3] Erie Refocused is a comprehensive plan for future development coordinated by Erie's Planning Department. *See* https://cityof.erie.pa.us/government/departments/city-planning/ (last visited June 15, 2023).

Council held a hearing on January 20, 2021. R.R. at 38a. Edward Betza (Betza), Erie's solicitor, advised at the outset that this hearing did not pertain to the front yard setback variance aspect of the project, which was before the Board. *Id*. at 41a. Gesue testified generally about the characteristics of this project as well as a similar property he is working on a block away. *Id*. at 42a. The designs were intended to be a modernized version of architectural styles in the neighborhood and region with amenities for convenience and security. *Id*. at 43a & 46a-47a. He expected the tenants to be young urban professionals and retirees interested in living downtown and near the waterfront. *Id*. at 46a-49a. Rents would be $1,000-$1,500 per month, which he acknowledged is high for Erie, but he hoped the advantages of new construction in this location would bring in tenants willing to pay more, which in turn would uplift the neighborhood. *Id*. at 50a, 59a, 62a & 70a-73a. He believed the off-street parking would be sufficient due to a belief that people interested in living downtown may be less likely to need cars. *Id*. at 52a. He acknowledged that Erie's real estate tax abatement program is instrumental in making the projects financially feasible to develop and promised as much participation by minority contractors and workers as possible. *Id*. at 67a-68a.

Gesue stated that he lives in New York City now and has done similar projects elsewhere, but he grew up in Erie and wanted to do something productive and interesting with long-vacant lots in the waterfront area of his hometown. R.R. at 48a-49a. These are the smallest projects he has ever done, and he was not doing them principally for personal gain, although he hoped to recover his costs. *Id*. at 48a-49a, 56a & 60a. He acknowledged local resistance when he first proposed the projects in August 2020 but noted that he conducted more outreach and received input at multiple meetings, then reworked the projects to conform with what he

3

learned. *Id*. at 57a-58a. He recalled about a dozen meetings with individual residents as well as with local neighborhood associations. *Id*. at 109a-10a.

Weber testified that the project would have one and a half parking spaces per apartment unit, which exceeds the requirement of one space per unit. R.R. at 86a. He explained changes to the plans that were made after community meetings, including conforming the roof style and lines with existing building heights, adjusting the exterior color palette, and exterior landscaping. *Id*. at 86a-88a.

Dan Dahlkemper (Dahlkemper), a member of the Design Committee, owns the lots at issue and abstained from the Committee vote. He testified that he hoped Council would consider the need for some flexibility for these projects. R.R. at 79a. Most of what he had seen on the Committee in terms of new construction might comply with zoning and other requirements but was often cheap, standard, and uninspired. *Id*. at 80a. He appreciated PERE's efforts at making these projects in a new and interesting style while also being sensitive to community concerns. *Id*. He stated that he lives in the neighborhood, has enjoyed the urban lifestyle with less driving, and has not experienced significant issues with parking. *Id*. at 79a-81a.

Ferguson testified that the project could be reconfigured to comply with the Erie Zoning Ordinance (Ordinance)[4] and preserve the views, sunlight, fresh air, parking, and quality of life of existing neighboring property owners. R.R. at 96a. She stated that those who would benefit from the project have a financial interest in it and those opposed are neighborhood taxpayers, many of whom have had their properties in their families for as long as 100 years or more. *Id*. at 97a.

Pete Frisina (Frisina), a realtor representing Dahlkemper as the seller of the property at issue, testified in favor of the project. R.R. at 98a. He recalled an

---

[4] City of Erie, Pa., Zoning Ordinance (2021), No. 80-2005, *as amended*.

4

event in 2019 inviting outside investors to invest in Erie and stated that Gesue has tried to make that happen and has been cooperative in resolving every obstacle so far. *Id*. at 99a-100a. Frisina seconded Weber's testimony that the off-street parking actually exceeds that required by the Ordinance and that objectors are trying to "change the rules halfway through the game" by critiquing the project's parking proposal. *Id*. Susan Dey, Gesue's realtor, acknowledged her financial interest in the project, but testified that the project represents an exciting potential development for Erie and should be considered on its own merits. *Id*. at 106a-07a.

Laurie Edwards (Edwards), who lives adjacent to the project site, testified that it is inharmonious with the area and "invasive." R.R. at 102a & 104a. She stated that the project will block her water view, which has been there since her grandfather built the house. *Id*. at 102a-03a. She recalled Gesue stating at a meeting that neighbors' views would be respected; she felt that promise had been broken. *Id*. She believed the impact on local parking would be significant. *Id*. at 104a. Robert Sprickman (Sprickman), who also lives adjacent to the property at issue, testified that the project was out of scale with the existing buildings and that the impact on street parking would be significant given that it is already a "circus" to get spaces, particularly in winter. *Id*. at 106a.

Donald Calabrese (Calabrese), who lives next door to the project site, testified that his house has been in his family for over 100 years and that he was not against development, but felt the project "just doesn't fit in" with the neighborhood. R.R. at 107a-08a. He had spoken to many other neighbors, and they felt the same. *Id*. at 108a. Carrie Dechurch (Dechurch), who lives just west of the project and had attended some of the community meetings, testified that she and other neighbors had

5

hoped the project would be like another one nearby that was smaller in scale and did not block their views. R.R. at 111a-12a.

After Dechurch's testimony, the public portion of the January 20, 2021, Council hearing was closed. R.R. at 112a. Council's minutes from its subsequent February 17, 2021, meeting indicate that PERE's conditional use request was approved by a 4-3 voice vote. *Id.* at 135a. The record contains a written record of the decision, but Council did not issue written findings of fact or conclusions of law in support of its determination. R.R. at 159a.

Ferguson appealed to the trial court. On April 28, 2021, she filed a "motion for additional evidence." Original Record (O.R.) #12. In the motion, Ferguson stated that before the January 2021 Council hearing, she had asked for the opportunity to cross-examine PERE's witnesses but had been told by the City Clerk that the hearing would be for testimony only. *Id.* She stated this violated her due process rights and asked the trial court to hold a hearing "to take additional evidence through the cross-examination of all witnesses who testified on behalf of PERE before Council, and that the [trial court] then issue its own findings" on PERE's conditional use application. *Id.* After argument, the trial court granted Ferguson's motion in a June 24, 2021, order directing that Council's hearing be "reconvened" and that all witnesses who previously appeared were to return and be subject to cross-examination by Ferguson's counsel. R.R. at 297a.

The trial court had issued a similar order in the companion zoning matter; therefore, on July 21, 2021, the Board and Council held a joint supplemental hearing on both matters. R.R. at 160a. At the outset, the city's deputy solicitor, Catherine Doyle (Doyle), stated: "The trial court has not remanded the case but has opened up the hearing to hear additional evidence, limited evidence regarding cross-

6

examination of [PERE's] witnesses." *Id*. at 164a. Doyle also stated that "both of the boards have made a final decision, and the case is currently before the trial court. This is merely to hear additional testimony as provided in the [trial] court order, and there will be no further deliberations or decisions by either board." *Id*. at 166a.

During cross-examination by Ferguson's counsel, Weber stated that he learned there had previously been houses on the lots. R.R. at 169a. He added that when PERE met with community members and neighbors, interference with their views was not among the concerns raised,[5] so that was not a consideration when the project was being redesigned. R.R. at 172a-74a. He did not recall discussions with Gesue about further reducing the number of apartments after the first reduction from 12 to 9 units. *Id*. at 176a. He stated that Ferguson's proposal to situate parking in the rear and place the building closer to 2nd Street would be unfeasible. R.R. at 177a-90a. This was because placing a driveway either through the building as a tunnel or on the sides of the building would make the project prohibitively expensive, and create issues with the project's height, sloping, grading, stormwater management, buffering with neighboring lots, and emergency vehicle access. *Id*.

Next, during cross-examination by Ferguson's counsel, Gesue acknowledged that waterfront views from the apartments will make them more attractive and enhance the economic feasibility of the project. R.R. at 192a. He added that having nine apartments is more economically feasible due to the marginal and incremental costs of each unit within the overall project; having fewer units will make each one more expensive to build and given the economic challenges in Erie, rents can only be so high to offset the break-even cost of acquiring and developing

---

[5] PERE's documentation from those meetings indicated concerns were expressed over the proposed building size and height, aesthetic conformity with the neighborhood, and privacy of nearby buildings' windows. R.R. at 29a-36a.

7

the site. *Id*. at 192a-93a. He did not believe he could make it work with only six units, even if that approach might comply with the Ordinance. *Id*. at 194a.

Objectors presented Patrick Cooper (Cooper), a civil engineer with real estate development and zoning experience. R.R. at 195a. His firm created the exhibits presented to Weber during his testimony. *Id*. at 198a. He believed his designs would not violate the Ordinance and disputed Weber's opinions that they would not be feasible due to buffering, drainage, grading, and emergency access issues. *Id*. at 199a-202a.

After the July 2021 supplemental hearing, Council did not change its February 2021 decision to grant PERE's conditional use application and again did not issue written findings of fact and conclusions of law. The matter returned to the trial court, which took no further evidence and held argument in December 2021, at which Ferguson's counsel and Doyle appeared along with Arthur Martinucci (Martinucci), who is the newly appointed solicitor and counsel for Council in the companion matter. R.R. at 236a. The parties addressed the merits, but also disputed the nature and purpose of the July 2021 supplemental hearing.

Ferguson's counsel explained that because the trial court's order for the supplemental hearing in the companion zoning matter expressly allowed Ferguson to present evidence, Cooper was permitted to testify at the joint hearing as Ferguson's expert and in rebuttal to PERE's witnesses even though he had not been part of the original proceedings before Council. R.R. at 250a-51a & 271a. Martinucci disagreed, referring to the trial court order's express statement that the supplemental hearing was for cross-examination of the witnesses from the initial hearing and the fact that the order did not formally remand the case or direct the Board or Council to reconsider the matter based on the substance of the supplemental

8

hearing. *Id.* at 261-62a. Martinucci did not believe Council had jurisdiction to consider Cooper's testimony or reconsider its approval of PERE's conditional use application. *Id*. at 267a-68a. Martinucci acknowledged, however, that he did not recall counsel for either the Board or Council objecting to Cooper's testimony at the supplemental hearing. *Id*. at 262a. Doyle added that the trial court could treat Cooper's testimony as permissible rebuttal evidence or as new testimony, but she would object to the latter. *Id*. at 283a. The trial court expressed an inclination that Cooper's testimony as an expert at the supplemental hearing was permissible but averred that its decision on that issue was not final at that time. *Id*. at 263a.

On April 7, 2022, the trial court issued a decision and order denying Ferguson's appeal. Trial Ct. Op.; O.R. #23. The court referenced its June 2021 order directing Council to "conduct a supplemental hearing to permit Ferguson to cross-examine witnesses and present evidence" and noted that Ferguson had presented Cooper's testimony at the July 2021 supplemental hearing, which was held jointly between Council and the Board. *Id*. at 4-5. The court noted that Council had not issued written findings of fact and conclusions of law in association with its February 2021 decision to grant the conditional use, but concluded the record was sufficient to undertake review.[6] *Id*. at 8-9. The court then reviewed the record under the deferential standard of review for substantial evidence, which is applicable where a court has taken no new evidence.[7] *Id*. at 5-6.

---

[6] The court stated in its procedural background that Council "made no additional findings" following the July 2021 supplemental hearing. Trial Ct. Op.; O.R. #23, at 5. However, given that Council did not issue written findings in support of its original February 2021 decision, it is unclear why the trial court characterized Council's inaction after the July 2021 supplemental hearing as a failure to make any "additional" findings.

[7] Where the trial court takes no additional evidence in a conditional use matter, our review is limited to considering whether the local governing body erred as a matter of law or abused its

9

The trial court found Council's grant of PERE's conditional use application was supported by substantial evidence. First, the court noted that multi-family residential buildings are allowed as a conditional use in the WR district. Trial Ct. Op. at 9. The court also noted record evidence that the project would bring a net positive effect on the neighborhood, that it conformed with the neighborhood in scale and aesthetics, and that while some existing views would be negatively impacted, the Ordinance required protection of existing views only to the extent feasible and in a dense neighborhood, views would be disrupted regardless of where the building was situated on the currently vacant lots. *Id.* at 9-11. By contrast, the court concluded that Ferguson had not shown "other evidence of harm to the public welfare in a way not normally expected from this type of residential use." *Id.* at 11. The trial court concluded that Council therefore had not committed either legal error or an abuse of discretion in granting the conditional use. *Id.* at 11-12. Ferguson appealed to this Court.

## II. Discussion

Ferguson first argues that the trial court erred in applying a "substantial evidence" or quasi-appellate standard of review rather than a *de novo* standard to the testimony and evidence from the July 2021 supplemental hearing. Ferguson also argues that, on the merits, Council and the trial court both erred in concluding that PERE met the conditional use requirements in the Ordinance.

---

discretion, which occurs when the body's findings of fact are not supported by substantial evidence. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1212 n.8 (Pa. Cmwlth. 2014).

Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC)[8] states:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may *remand* the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . . . If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

53 P.S. § 11005-A (emphasis added). This section is applicable to matters before supervisors and council members as well as matters before zoning hearing boards. *See Bd. of Supervisors of E. Rockhill Twp. v. Mager*, 855 A.2d 917 (Pa. Cmwlth. 2004) (concerning remand to board of supervisors); *Ford v. Zoning Hearing Bd. of Caernarvon Twp.*, 616 A.2d 1089 (Pa. Cmwlth. 1992) (concerning remand to zoning hearing board).

Section 913.2(b) of the MPC, added by the Act of December 21, 1988, P.L. 1329, also states the following specifically with regard to conditional use determinations made by supervisors or council members:

> (b)(1) *The governing body shall render a written decision or, when no decision is called for, make written findings*

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

11

*on the conditional use application within 45 days after the last hearing before the governing body. Where the application is contested or denied, each decision shall be accompanied by findings of fact or conclusions based thereon, together with any reasons therefor.* Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

(2) Where the governing body fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in section 908(1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the governing body to meet or render a decision as hereinabove provided, the governing body shall give public notice of the decision within ten days from the last day it could have met to render a decision in the same manner as required by the public notice requirements of this act. If the governing body shall fail to provide such notice, the applicant may do so.

(3) Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction. *A copy of the final decision or, where no decision is called for, of the findings shall be delivered to the applicant personally or mailed to him* no later than the day following its date.

53 P.S. § 10913.2(b) (emphasis added).

In *Sowich v. Zoning Hearing Board of Brown Township*, 214 A.3d 775 (Pa. Cmwlth. 2019), a common pleas court granted a landowner's "motion to present additional evidence" and remanded the case to the zoning board to supplement the record on specific factual matters that had not been before the board in prior proceedings. *Id*. at 780-81. At the remand proceeding, numerous witnesses who

had not previously appeared testified on the specific subject matter. *Id*. at 782. After the remand proceeding, the board did not make additional findings or conclusions or alter its decision against the landowner; it simply indicated that the record was to return to the common pleas court for further proceedings. *Id*. at 782.

When the matter returned to the common pleas court, that court applied the deferential substantial evidence standard to the post-remand record and affirmed the board's decision. *Id*. at 782-83. On the landowner's appeal, we concluded that because the zoning board failed after remand proceedings to account for the new substantive evidence, under Section 1005-A, the common pleas court was able and required to make *de novo* findings of fact on that specific evidence; we therefore remanded to the common pleas court for that purpose. *Id*. at 785 & 790.

Ferguson, relying on *Sowich*, argues that this case must be remanded to the trial court for it to apply a *de novo* rather than deferential standard to the record from the supplemental hearing and to produce a new opinion with factual and credibility determinations based on the supplemental hearing. Ferguson's Br. at 10-13. Council responds that both Ferguson's motion and the trial court's order directing the supplemental hearing emphasized that its purpose was not for the introduction of substantively new evidence, but simply to allow Ferguson to cross-examine PERE's witnesses from the December 2020 hearing. Council's Br. at 11. Therefore, according to Council, the trial court did not actually receive any new evidence and was not required to make *de novo* findings or determinations. *Id*.

Ferguson's "motion for additional evidence" to the trial court and the trial court's order granting that motion focused primarily on cross-examination of PERE's witnesses from the previous proceeding. *See* O.R. #12 at 5; R.R. at 297a. Unlike in the companion variance case before the Board, the trial court's order here

13

did not indicate that Ferguson could provide "additional" evidence other than the PERE witnesses' cross-examination testimony. However, cross-examination testimony is itself substantive evidence. Black's Law Dictionary (11th ed. 2019) (defining "testimony" as "[e]vidence that a competent witness under oath or affirmation gives in a [legal proceeding]"). The ensuing July 2021 supplemental hearing was a joint proceeding of both Council and the Board and the testimony of Cooper, who did not previously testify before either entity, pertained to both matters: preservation of views, which was part of Council's waterfront conditional use consideration,[9] and the loss of Ferguson's view, which was the basis of her objection to the variance in the companion zoning matter. R.R. at 198a-202a.

There are similarities between this case and *Sowich*. There, the common pleas court's formal remand was to secure additional substantive evidence. 214 A.3d at 781-82. Here, the trial court did not expressly remand the matter, instead characterizing the proceeding as a "reconvening" of the February 2021 hearing to cross-examine PERE's witnesses. R.R. at 297a. However, as noted, cross-examination testimony is itself substantive evidence. Therefore, even in the absence of a formal remand, the practical result here was the same as in *Sowich*: new evidence was added to the record, specifically the cross-examination testimony of Gesue and Weber and Cooper's "new" testimony and renderings. *See id*. at 198a-202a. As in *Sowich*, Council here did not consider or comment on the new evidence, likely because of Doyle's prefatory statement that, in the absence of a formal remand or direct order by the trial court to incorporate and reconsider the evidence after the

---

[9] Subsection 306.40 of the Ordinance, which is part of Section 306 (titled "CONDITIONAL USES – WATERFRONT DISTRICTS"), states: "Careful consideration shall be given to the preservation of natural vistas and to the future development of vistas which open into undeveloped areas. Of importance is the Bluff area. To the extent feasible, Bluff views shall be preserved." Ordinance § 306.40.

14

supplemental hearing, Council was authorized only to conduct the hearing and return the matter to the trial court. R.R. at 164a, 166a & 206a.

However, *Sowich* is ultimately distinguishable. There, the remand by the court of common pleas was for new evidence on a discrete issue; the court of common pleas was able to conduct a *de novo* review of that evidence from the post-remand record. 214 A.3d at 784-85. Here, however, unlike in *Sowich*, the cross-examination and rebuttal evidence from the July 2021 supplemental proceedings pertained directly to and could not be separated from the evidence taken at the earlier Council proceedings.

The MPC states in Section 1005-A that the common pleas court "shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any," when the "record does not include findings of fact or if additional evidence is taken by the court or by a referee[.]" 53 P.S. § 11005-A. Here, the additional evidence was not taken by either the court or a referee, but by Council; therefore, the latter part of the provision is inapplicable. Although the trial court could have reviewed the July 2021 supplemental proceeding evidence anew under the first part of the provision because the record before it "[did] not include findings of fact," the interconnectedness of the supplemental and original evidence would have made that determination unwieldy and perhaps inconsistent. This case is therefore unlike *Sowich*.

This matter is also complicated by the fact that Council failed to issue written findings of fact and conclusions of law in support of its February 2021 decision to grant the conditional use. As noted, the MPC requires that when local governing bodies decide contested conditional use matters, as is the case here, they must produce written findings and conclusions. 53 P.S. § 10913.2(b)(1) ("Where

15

the application is contested or denied, each decision shall be accompanied by findings of fact or conclusions based thereon, together with any reasons therefor."). Council failed to do so.

### III. Conclusion

Due to the combination of Council's failure to issue written findings of fact and conclusions of law, the trial court's determination to review the matter without written findings and conclusions from Council, and the trial court's further determination to review the matter using a deferential standard of review, this Court is left without a decisional foundation from either tribunal providing a factfinding evaluation of the evidence from the initial and supplemental hearings. We therefore remand the matter to the trial court for further remand to Council to consider all of the evidence from both proceedings and produce written findings of fact and conclusions of law in compliance with Section 913.2(b)(1) of the MPC. Thereafter the matter may return to the trial court, at which time that court will be able to properly consider the matter under the deferential standard of review.[10]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[10] In light of our disposition to remand this matter, we do not reach the merits of Ferguson's appeal.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet H. Ferguson,            :
            Appellant      :
                         :
           v.             :
                         :   No. 436 C.D. 2022
City Council of the City of Erie  :

O R D E R

AND NOW, this 16th day of June, 2023, the April 7, 2022, order of the Court of Common Pleas of Erie County (trial court), which denied Janet H. Ferguson's appeal of the February 17, 2021, decision of the City Council of the City of Erie (Council), granting a conditional use application filed by PE Real Estate Holdings, LLC, is VACATED. This matter is REMANDED to the trial court for further remand to Council to issue written findings of fact and conclusions of law in accordance with this opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge